# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

United States of America,   Criminal No. 14-221 ADM/JJK

      Plaintiff,

v.   **REPORT AND RECOMMENDATION**

Cartez Lamar Cook,

      Defendant.

    Jeffrey J. Paulson, Esq., Assistant United States Attorney, for the plaintiff, United States of America;

    Caroline Durham, Esq., and Marcus L. Almon, Esq., for the defendant, Cartez Lamar Cook.

This action came on for hearing before the Court, Magistrate Judge Jeffrey J. Keyes, on October 20, 2014, at the U.S. Courthouse, 316 North Robert Street, St. Paul, MN  55101.  The Court issued an Order on Motions dated October 20, 2014, reserving Defendant's motions to suppress statements and search and seizure evidence for submission to the District Court on Report and Recommendation. Testimony was presented and exhibits were received at the hearing with regard to suppression of evidence.

Based upon the file and documents contained therein, along with testimony of witnesses and exhibits presented at the hearing, and the memorandums of counsel, this Court makes the following:

**FINDINGS**

I. **Background**

      **November 25, 2013, Arrest.**  Minneapolis Police Officer Christopher P. Kelley and his patrol partner were on routine patrol duty near the 4400 block of Nicollet Avenue in Minneapolis at approximately 2:00 a.m. on the morning of November 25, 2013.  The area is primarily residential with some commercial establishments, including a nearby bar.  The weather at the time was cold, and it was around bar closing time.  The location was in an area of high street crime.  In an effort to deter auto thefts, the officers were watching for vehicles that may have been started for warming by bar patrons and then left unattended before leaving the bar, and were therefore attractive targets for auto thieves.  The officers observed a parked Oldsmobile Alero, MN. Lic. 214 DKW (Def. Hrg. Ex. 1), that was emitting exhaust, but as they drove past it they could not determine whether the vehicle was occupied.  The officers then came around again and approached the Oldmobile from the south.  The officers now could see two persons in the Oldsmobile, one person in the driver's seat and one individual in the back seat, directly behind the driver.  Officer Kelley decided to make contact with the occupants to find out what was happening, in light of the time of night and the location.  The officers pulled up behind the car, offset and approximately 3/4 car lengths back.  The second stage emergency wig-wag lights on the squad car light bar were activated to alert the vehicle occupants that the police were

present, but the light bar was not engaged in full light-flashing mode.  The officers were on patrol in a borrowed supervisor's vehicle which did not have the capacity to digitally video record the event.  The Oldsmobile was not unlawfully parked and no traffic or equipment violation had been observed.

Officer Kelley exited the squad car and went to the driver's side while his partner went to the passenger side.  When the driver rolled down the window, Officer Kelley smelled the strong odor of marijuana coming from inside the car.  The driver, Defendant Cartez Lamar Cook, was instructed to get out of the vehicle.  When he got out Cook was promptly placed in custody and handcuffed behind his back.  As Officer Kelley was dealing with Cook, the back seat passenger, identified as Curtis Leroy Johnson, jumped towards Officer Kelley's patrol partner.  Officer Kelley pushed Cook to the ground and went to assist his partner with Johnson.   In the altercation Johnson was shot with a taser.  While officers were engaged with Johnson, Cook fled the scene on foot, still in handcuffs.  Additional officers were called to assist and were provided Cook's description.  Shortly thereafter, the other officers apprehended Cook in a vehicle that belonged to him but was being driven by his girlfriend.  An Apple iPhone was found on his person.  After Johnson was under control Officer Kelley looked in the Oldsmobile Alero and observed suspected crack cocaine and marijuana in the rear area where Johnson had been seated.  The Oldsmobile was seized and towed.

At the time of the above-described incident, Minneapolis police were investigating the gunshot death of Derrick Holt, the victim of a suspected homicide in Minneapolis on November 22, 2013.  Defendant Cartez Cook had been identified as a possible suspect in Holt's death, based upon cell phone records indicating contact between Holt and Cook within one to two hours before the death.  In addition, investigators had information that the last time Holt was seen alive he was with Cook in a gray Monte Carlo, MN. Lic. UTL 518, the car being driven by Cook's girlfriend at the time of his arrest on November 25, 2014.  In addition, the cell phone used by Cook had been accessed in the vicinity in which Holt's body was found.

**AT&T Search Warrant.**  On November 23, 2013, Hennepin County District Court Judge Elizabeth Cutter issued a warrant authorizing the seizure of information relating to a specific cellular telephone number (Hrg. Ex. 4).  The warrant was issued on the basis of information contained the Affidavit of Minneapolis Police Sgt. Ann Kjos.  The affidavit stated that homicide investigators had previously obtained service provider records relating to a cell phone used by the homicide victim, and those records revealed recent calls to and from the cell phone to which records were being sought under the requested warrant.  The warrant was addressed to a certain identified cellular service provider (AT&T Communications) and particularly requested subscriber and billing information, call detail records including cell sites, text messages and per call measurement

4

data from 6:00 a.m. on 11/20/13 through 10:00 a.m. on 11/23/13.

**Apple iPhone Search Warrant.** On December 26, 2013, Hennepin County District Court Judge David M. Duffy issued a warrant authorizing a complete forensic examination and seizure of information from a specifically identified Apple iPhone that was presently in the custody of the Minneapolis Police Department. The warrant was issued on the basis of information contained in another Affidavit of Minneapolis Police Sgt. Ann Kjos. (Gov't Hrg. Ex. 2.) The affidavit provided the number of the iPhone and further identified the phone as one recovered from Cook at the time of his arrest on November 25, 2013. Also, the phone had been used to contact Defendant's girlfriend immediately prior to his arrest, and was the phone that had been used to communicate with Derrick Holt prior to his death. The subsequent search of the iPhone revealed photos of Cook as well as a photo of a handgun laying on someone's lap.

**DNA Warrant.** On November 25, 2013, a warrant was issued by Hennepin County District Court Judge David M. Duffy authorizing the seizure of a DNA sample from Cook (Hrg. Ex. 3). The search warrant specifically identifies the object of the warrant as a DNA sample from Cartez Lamar Cook, a person located in Minneapolis, Hennepin County, Minnesota. The DNA warrant was issued on the basis of information contained in the Affidavit of Minneapolis Police Sgt. Luis Porras, stating that the known DNA sample was requested in an effort

to establish possession of drugs that were seized pursuant to a pre-towing inventory search of the Oldsmobile that was occupied by Cook and Johnson on November 25, 2013.  A DNA sample was received from Defendant on November 25, 2013, by buccal swap taken by Sgt. Porras in an interview room at the Hennepin County Jail.  Cook was advised that the sample was being taken for purposes of obtaining DNA.  Investigating officers did not have possession of comparison DNA samples at the time.

**Oldsmobile Search Warrant.**  On November 26, 2013, Hennepin County District Court Judge David M. Duffy issued a warrant to search a particularly described Oldsmobile Alero that had been impounded following the arrest of Defendant Cook in Minneapolis, Minnesota on November 25, 2013.  (Hrg. Ex. 1).  The search warrant identified the objects of the warrant as photos of the car itself, handguns, ammunition magazines, a handgun case or box, cartridge casing(s), documents indicating vehicle ownership or use, and narcotics.  The warrant was issued on the basis of probable cause evidence asserted in another Affidavit of Minneapolis Police Sgt. Ann Kjos, including evidence relating to Defendant Cook's arrest on November 25, 2014, and drugs seized pursuant to an inventory search of the vehicle following the arrest.   The warrant was executed the same day, and evidence, including a handgun, was seized pursuant to the warrant.

**November 27, 2013 Interview Statement.**  Minneapolis homicide

detectives Sgt. Ann Kjos and Sgt. Luis Porras met with Cook in a room at the Hennepin County Jail on November 27, 2013 for purposes of conducting an interview. Sgt. Kjos read the *Miranda* advice of rights to Cook from a card. The interview was partially recorded and lasted 30 to 40 minutes (Hrg. Ex. 5). The recorded portion lasted 17 to18 minutes and ceased when Defendant requested that the recorder be turned off before he engaged in any further discussion. Additional statements were provided by the defendant after the recording stopped. No threats or promises were made to Defendant before or during the interview to induce his cooperation. He did not request the assistance of counsel.

**December 3, 2013 Interview Statement.** Detectives Kjos and Porras met with Defendant Cook again for an interview on December 3, 2013. This interview meeting was initiated on Cook's request. Again, Sgt. Kjos read the *Miranda* advice of rights to Cook from a card. The interview was recorded and lasted 52 minutes (Hrg. Ex. 6). There were no threats or promises made to Cook to induce his cooperation; he did not request that the interview stop; and he did not request the assistance of counsel.

Based upon the foregoing Findings, the court makes the following:

## II. ANALYSIS AND CONCLUSIONS

**November 25, 2013 Arrest.** Initial police contact with Defendant Cook on November 25, 2013 was the result of Officers approaching a vehicle that was already parked and was not a result of a vehicle stop. The investigatory

check was lawful, and Cook's arrest was lawfully based upon probable cause consisting of the officer's detection of the odor of burning marijuana coming from inside the vehicle. Cook's arrest was not an unlawful seizure of his person.

Cook contends that he was unlawfully seized and was not free to leave the scene from the time officers pulled their squad car behind his vehicle and activated the wig-wag lights. The government argues that there was no vehicle stop in this instance; and the use of second stage safety wig-wag lights, as well the officers' approaching the parked vehicle, did not constitute the show of police authority necessary to cause Cook to reasonably believe he had been seized. The government asserts that a seizure occurred only after Officer Kelley noticed a strong smell of marijuana coming from the car after Mr. Cook rolled down the window, and Cook's seizure was lawfully based on the officer's reasonable suspicion of illegal drug use.

Cook relies wholly on the activation of the squad car emergency lights to support the claim that there had been an unlawful vehicle stop and seizure. The government persuasively argues that activation of the wig-wag lights did not alter the nature of the encounter to render it a vehicle stop. The car was already parked. The officers' approach towards the vehicle to determine whether the car was occupied, and if so, to speak with the occupants, was not a Fourth Amendment violation. *United States v. Barry*, 394 F.3d 1070, 1074-75 (8th Cir. 2005). In the absence of evidence of that the contact between the

officers and the Defendant was somehow threatening or offensive, as represented by actions such as a police display of weapons, physical touching of the defendant, or the presence of several officers, police contact of the sort involved here does not constitute a seizure for Fourth Amendment purposes. *Id.* at 1075, citing *United States v. Mendenhall*, 446 U.S. 544, 554-55 (1980). In the case presently before this Court there is no evidence of conduct by officers that could reasonably be construed as threatening, coercive, or otherwise indicative of a seizure of Defendant's person prior to the time the odor of marijuana smoke was detected by Officer Kelley.

In *United States v. Clements*, 522 F.3d 790 (7th Cir. 2008), the Seventh Circuit considered an encounter similar to the one now before this Court. The *Clements* court stated:

> The police encounter in this case was not a seizure for Fourth Amendment purposes. Clements had voluntarily stopped his car; he did not stop because of the flashing police lights. Likewise, Clements was not seized when the officers approached his car. The officers approached the car to investigate why the car had been parked and running on a public street for four hours, a circumstance unusual enough to at least merit some investigation. The officers illuminated their flashing lights to alert the car's occupants that they were going to approach the vehicle. Without identifying themselves appropriately to the car's occupants, the officers would have put themselves at risk in approaching a parked car late at night. Other than illuminating their flashing lights for identification and safety purposes, the officers did nothing that could have made Clements feel that his freedom was restrained: They did not draw their weapons, they did not surround Clements's car with multiple squad cars or officers or otherwise prevent him from driving away, they did not lay a hand on Clements, and they did not use forceful language or tone of voice until after the officers felt threatened by Clements's

gesture with the knife. Up to this point, the circumstances could not have caused a reasonable person to feel restrained.

*Id.* at 794-95.

This Court finds the reasoning in *Clements* to be compelling. *See also*, *United States v. Mabery*, 686 F.3d 591, 579 (8th Cir. 2012) (holding that the act of shining a spotlight on the defendant's vehicle was not a sufficiently intrusive show of authority to constitute a seizure) (citing *Clements*, 522 F.3d 790.) Defendant Cartez Lamar Cook was not seized under the Fourth Amendment as a result of officer's activation of squad car emergency lights, and there are no grounds for suppression of evidence in this case based upon unlawful seizure. Defendant's motion to suppress evidence should be denied.

**Search Warrants**

**Cell Phone Subscriber Warrant.** Evidence obtained pursuant to a warrant to obtain service provider information relating to an expressly identified cell phone number associated with an active homicide investigation (Hrg. Ex. 4) was not unlawfully obtained in violation of the constitutional rights of Defendant Cook. The warrant was issued on November 23, 2013, and was based upon sufficient probable cause as stated in the Affidavit of Minneapolis Police Sgt. Ann Kjos and as determined by Hennepin County District Court Judge Elizabeth Cutter. The warrant properly and sufficiently identified the objects of the seizure and the data to be seized. The warrant affidavit further established a nexus between the objects of the warrant and the offense under investigation by stating

that the cell phone number was found on a homicide victim's cell phone, and a time and place proximity between the phone number and the homicide was established. The November 23, 2013 cell phone search warrant in this matter was lawfully issued and there is no requirement for suppression of evidence seized pursuant to the warrant.

**iPhone Search Warrant.** Suppression of evidence obtained pursuant to a November 26, 2013 warrant to conduct a forensic search of a particularly identified cell phone (Hrg. Ex. 2) is not required. The warrant properly and sufficiently identified the cell phone and the object of the seizure. The warrant affidavit established a nexus between the object of the warrant and the offense in this case by stating that the cell phone number was found on a homicide victim's cell phone, and a time and place proximity between the phone number and the homicide was established. Further, the affidavit states evidence to establish Defendant's possession of the phone at the time of his arrest in this matter, as well as his use of the cell phone in connection with his efforts to escape arrest. The November 26, 2013 iPhone search warrant in this matter was lawfully issued and there is no requirement for suppression of evidence seized pursuant to the warrant. "[A] search is supported by probable cause if <u>facts are shown</u> making it likely that evidence of a crime will be found in the place to be searched." <u>United States v. Koons</u>, 300 F.3d 985, 990 (8th Cir. 2002) (emphasis added). The affidavit in this instance contains ample nexus facts and probable

cause therefore exists.

**DNA Warrant.** Evidence seized pursuant to a warrant to seize a DNA sample from the person of Cartez Jamal Cook (Hrg. Ex. 3) was not unlawfully obtained in violation of the constitutional rights of the defendant. The warrant was issued on November 26, 2013, and was based upon sufficient probable cause as stated in the Affidavit of Minneapolis Police Sgt. Ann Kjos and as determined by Hennepin County District Court Judge David M. Duffy. The warrant properly and sufficiently identified the person and the subject of the seizure and the warrant affidavit stated a nexus between the object of the warrant and an alleged felony offense. The DNA search warrant in this matter was lawfully issued and there is no requirement for suppression of DNA evidence seized pursuant to the warrant.

**Oldsmobile Search Warrant.** Evidence seized pursuant to a warrant to search a particularly described vehicle presently located in Minneapolis, Minnesota (Hrg. Ex. 1) was not unlawfully obtained in violation of the constitutional rights of Defendant Cook. The vehicle search warrant was issued on November 26, 2013, and was based upon sufficient probable cause as stated in the Affidavit of Minneapolis Polic Sgt. Ann Kjos and as determined by Hennepin County District Court Judge David M. Duffy. The warrant properly and sufficiently identified the location of the search and the items to be seized. The search warrant in this matter was lawfully issued and executed and there is no

requirement for suppression of evidence seized pursuant to the warrant.

**Statements**

**November 27, 2013 Interview.** Defendant Cook's statements to Sgt. Kjos and Sgt. Porras in an interview conducted on November 27, 2013, were provided voluntarily and were not obtained in violation of Defendant's constitutional rights (Hrg. Ex. 5). Cook was properly advised and was able to understand and comprehend his rights pursuant to Miranda as accurately presented to him from a written statement of rights card. He was not subjected to force, threats, or promises in exchange for his statements. He effectively waived his right to remain silent and his right to the assistance of counsel, and the officers immediately complied with his request that recording be stopped.[1] Upon considering the totality of circumstances, the court concludes that Cook knowingly, intelligently, and voluntarily waived his right to remain silent and his right to have an attorney present during questioning. Suppression of Defendant's interview statements on November 27, 2013 is not required.

**December 3, 2013 Interview.** Defendant Cook's statements to Sgt. Kjos and Sgt. Porras in an interview conducted on December 3, 2013, were provided voluntarily and were not obtained in violation of the defendant's

---

[1] The prosecutor expressly advises the Court and counsel that the government does not intend to use Defendant's non-recorded statements on November 27, 2013, or statements made at the time a DNA swab was obtained on November 25, 2013, in its case-in-chief in the trial in this matter, although such statements may be offered for impeachment purposes if appropriate.

constitutional rights (Hrg. Ex. 6).  Defendant was properly advised and was able to understand and comprehend his rights pursuant to Miranda as accurately presented to him from a written statement of rights card.  He was not subjected to force, threats, or promises in exchange for his statements.  He effectively waived his right to remain silent and his right to the assistance of counsel.  Upon considering the totality of circumstances, the court concludes that Cook knowingly, intelligently, and voluntarily waived his right to remain silent and his right to have an attorney present during questioning.  Suppression of Defendant's interview statements on December 3, 2013, is not required.

Based upon the foregoing Findings and Conclusions, the Magistrate Judge makes the following:

### RECOMMENDATION

The Court **hereby recommends** that:

1.  Defendant Cartez Jamal Cook's Motion for Suppression of Statements be **denied** [Docket No. 14]; and

2.  Defendant Cartez Jamal Cook's Motion for Suppression of Unlawful Search be **denied** [Docket No. 15].

Dated:   November 17, 2014

    s/ *Jeffrey J. Keyes*
Jeffrey J. Keyes
United States Magistrate Judge

Under Local Rule 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by December 1, 2014, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within fourteen days after service thereof.  All briefs filed under this rule shall be limited to 3500 words.  A judge shall make a de novo determination of those portions of the Report to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within ten days of receipt of the Report.