UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

       Plaintiff,

  v.

Cartez Lamar Cook,

       Defendant.

**MEMORANDUM OPINION AND ORDER**
Criminal No. 14-221 ADM/JJK
Civil No. 18-06 ADM

_____

Jeffrey S. Paulsen, Assistant United States Attorney, United States Attorney's Office, Minneapolis, MN, on behalf of Plaintiff.

Cartez Lamar Cook, pro se.
_____

## I. INTRODUCTION

This matter is before the undersigned United States District Judge for a ruling on Defendant Cartez Lamar Cook's ("Cook") Motion to Vacate under 28 U.S.C. § 2255 [Criminal Docket No. 111] ("2255 Motion").[1] Also before the Court are Cook's First Amended Motion to Vacate Under 28 U.S.C. § 2255 [Docket No. 114] ("Amended 2255 Motion") and Motion for Leave to File an Amended Complaint [Docket No. 122].[2] For the reasons below, Cook's Motions are denied.

## II. BACKGROUND

In the early morning hours of November 25, 2013, police officers on routine patrol observed an idling car in a high crime area of south Minneapolis. United States v. Cook, 842

---

[1] All docket citations are to the Criminal Docket.

[2] The proposed amended pleading attached to the Motion for Leave to Amend is identical to Cook's January 16, 2018 Amended § 2255 Motion.

F.3d 597, 599 (8th Cir. 2016). The officers were unable to determine if the vehicle was occupied. Id. Concerned that an unoccupied idling vehicle could be targeted by thieves, the officers circled around the block to observe the vehicle. Id. As the officers approached the vehicle a second time, they could see two people were inside. Id.

The officers decided to make contact with the occupants. Id. They parked behind the vehicle and then activated the emergency lights' "wig wag" setting in their squad car. Id. As the officers approached the vehicle on foot, an individual later identified as Cook rolled down the window next to the driver seat. Id. The officers detected the aroma of marijuana and took Cook into custody. Id. Cook was removed from the vehicle and handcuffed. Id. While the officers were attending to the other individual in the vehicle, Cook fled. Id. He was apprehended several blocks away and arrested. Id.

Officers later observed marijuana and crack cocaine in the back seat of the vehicle. Id. The vehicle was towed and impounded. Id. After a warrant was obtained, officers searched the vehicle and uncovered a firearm hidden in the vehicle's center console. Id. DNA analysis revealed that the firearm was consistent with Cook's DNA, but not that of 99.6% of the general population, including the other passenger. Id. Ballistics testing connected the firearm to the homicide of Derek Holt ("Holt"), who was killed three days before Cook's arrest. Id. At the time Cook was arrested, he had already been identified by law enforcement as a person of interest in Holt's death. Id.

On July 9, 2014, Cook was charged by Indictment [Docket No. 1] with being a Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1). The Indictment charged Cook with being an Armed Career Criminal for having been previously convicted of at least three

violent felonies. 18 U.S.C. § 924(e)(1). Cook entered a not guilty plea and proceeded to trial.

At trial, the Government's evidence included: 1) a witness who identified the firearm Cook was charged with possessing as belonging to Holt; 2) cell phone records connecting Cook with Holt, including evidence that Cook called Holt shortly before his death; 3) testimony that Holt's pants pocket had been turned out and that $80 Holt had been carrying the night before was missing; and 4) DNA consistent with Cook's was found in Holt's pants pocket. Cook, 842 F.3d at 601. In totality, the Government's circumstantial evidence strongly suggested that Cook met with Holt, shot him with his own gun, and stole the $80 from his pocket. Id. Cook's counsel unsuccessfully argued that this evidence should be excluded. The Court ruled that the evidence was admissible as an integral part of the immediate context of the crime charged, and was therefore not governed by Rule 404(b). Trial Tr. [Docket Nos. 102–05] 20:15–21:1. During trial, the Government reminded the jury that Cook was not on trial for the murder of Holt. The Court instructed the jury similarly, focusing the jury's attention on the question of whether Cook possessed the firearm charged in the Indictment. See Jury Ins. [Docket No. 68] 14.

After a three day trial, the jury found Cook guilty of the firearm charge. The Presentence Investigation Report [Docket No. 81] ("PSR") calculated Cook's total offense level to be 38, which yielded a guideline sentence range of 360 months to life imprisonment. PSR ¶ 28. The PSR noted that although the Indictment charged Cook as an Armed Career Criminal pursuant to 18 U.S.C. § 924(e)(1), it did not appear that Cook had the necessary three prior convictions to trigger the enhanced 15-year mandatory minimum sentence under 18 U.S.C. § 924(e)(1).[3]

---

[3] As discussed more fully below, the law was changed between when Cook was charged and when he was sentenced.

PSR ¶ 2. As such, the statutory maximum sentence was 120 months imprisonment. 18 U.S.C. § 924(a)(2). Id. On November 2, 2015, Cook was sentenced to 120 months imprisonment. Cook's conviction was confirmed on direct appeal. Cook, 842 F.3d at 599.

In his 2255 Motion, Cook argues that his conviction should be vacated for four reasons: 1) the prosecution failed to disclose exculpatory evidence; 2) his counsel was ineffective for failing to advise him to plead guilty; 3) his counsel was ineffective for failing to challenge testimony that was false and misleading; and 4) his sentence was incorrectly enhanced based on the connection with the Holt murder.

After the Government filed its Response [Docket No. 113], on January 16, 2018, Cook filed his Amended 2255 Motion and raised new grounds for relief. In the Amended 2255 Motion, Cook identifies eight additional instances where he argues that his counsel failed to provide effective assistance. Cook also argues that the Eighth Circuit's decision in United States v. Black, 871 F.3d 590 (8th Cir. 2017), constitutes newly discovered evidence.[4] Cook next argues that the Government violated its obligations under Brady v. Maryland, 373 U.S. 83 (1963), and Giglio v. United States, 405 U.S. 150 (1972). Cook also argues that photographic evidence introduced at trial elicited reactions from spectators in the gallery that impaired his right to a fair trial. Finally, Cook argues that the Government withheld evidence or knowledge that Cook was not an Armed Career Criminal.

On February 13, 2018, Cook filed his Motion for Leave to File and Amended Complaint, requesting permission to supplement his original petition to cure alleged factual deficiencies

---

[4] The Government points out that the actual name of the case is United States v. Parker, not United States v. Black. The Court will use the case name Black.

4

identified by the Government.[5]  Finally, on May 4, 2018, Cook filed a Reply [Docket No. 126] to the Government's Opposition.  In his Reply, Cook raises two new issues.  The first describes an "unidentified female officer" who was allegedly the only officer capable of detecting the aroma of marijuana coming from the idling vehicle.  The second issue relates to cell phone evidence introduced at trial.  Cook contends that the evidence at trial failed to connect the cell phone to Cook.  The Government filed a Second Supplemental Opposition [Docket No. 127] to Cook's May 4, 2018 Reply.

### III.  DISCUSSION

**A.  Section 2255 Standard**

28 U.S.C. § 2255 provides a person in federal custody with a limited opportunity to collaterally attack the constitutionality, jurisdictional basis, or legality of their sentence.  See United States v. Addonizio, 442 U.S. 178, 185 (1979).  Relief is reserved for violations of constitutional rights and for a narrow range of injuries which, if untreated, would result in a miscarriage of justice.  See Poor Thunder v. United States, 810 F.2d 817, 821–22 (8th Cir. 1987).

**B.  Disclosure of Exculpatory Evidence**

Cook argues that "[t]he prosecutor's office withheld favorable exculpatory evidence from the defendant and the jury.  They also allowed FALSE statements to be entered on record by Police Officer's (sic) who where (sic) not the first responding officer's (sic) to the scene of the Terry Stop."  2255 Motion at 4.  Relatedly, Cook claims that the Government violated its

---

[5] In its January 9, 2018 Response, the Government stated that Cook's first and third grounds for relief—the Government failed to turn over exculpatory evidence and an ineffective assistance of counsel claim premised on false and misleading testimony—did not identify what evidence should have been produced or what testimony should have been challenged, which made it "impossible for the Government to respond meaningfully."  Response at 5.

disclosure requirements under Brady and Giglio. Cook additionally argues that the Government withheld evidence that Cook was not an Armed Career Criminal. None of Cook's arguments have merit.

Cook appears to contend that the officer who first approached Cook while he was sitting in the idling vehicle was not the individual who testified to this fact at trial. This is incorrect. Officer Christopher Kelley ("Officer Kelley") testified that he was the officer who had the initial encounter with Cook. Tr. at 162:6–8. Cook next appears to suggest that Officer Kelley's partner, who was also involved in the events that took place at the initial scene, was not disclosed to the defense. This is also incorrect. That officer, Officer Landmesser, was identified by name at the pretrial motions hearing and at trial. See Pretrial Tr. [Docket No. 36] at 4:22 ("I was with my partner, Officer Landmesser."); Tr. at 158:22 (same). Moreover, reports created by Officers Kelley and Landmesser were disclosed to the defense. Second Supplemental Opp'n Ex. 1. Cook's arguments supporting his claim are factually flawed and therefore do not provide a basis to vacate his conviction.

Cook next argues that the Government allegedly withheld knowledge or evidence that Cook was not an Armed Career Criminal. At the time Cook was charged, he had been previously convicted of three prior violent felonies, subjecting him to the enhanced penalties of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(1). By the time Cook appeared for sentencing, the Supreme Court had decided Johnson v. United States, 135 S. Ct. 2551 (2015), which invalidated the residual clause of the ACCA. Based on Johnson, two of Cook's prior convictions no longer qualified as violent predicate felonies under the ACCA. Thus, Cook was no longer an Armed Career Criminal. Given the timing of Johnson in relation to this case, there

is no merit to Cook's claim that the Government withheld evidence showing that he was not an Armed Career Criminal.

### C. Ineffective Assistance of Counsel

In Strickland v. Washington, the Supreme Court set forth the standard for claims of ineffective assistance of counsel. 466 U.S. 668 (1984). To properly demonstrate a claim, a defendant must show that his attorney's representation fell below an objective standard of reasonableness. Id. at 687-88. The defendant must also demonstrate that a reasonable probability exists that but for the attorney's errors, the result of the proceeding would have been different. Id. at 694. "[W]hen reviewing an ineffective-assistance-of-counsel claim, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Woods v. Donald, 135 S. Ct. 1372, 1375 (2015) (quotations omitted).

Cook argues that his counsel failed to provide effective representation throughout the proceedings.

### 1. Guilty Plea

Cook first argues that his counsel was ineffective for not advising him to plead guilty. In support of his claim, Cook argues that the "[t]he government and his counsel of record FORCED the movant into going to trial by MISCHARACTERIZING him as a ACCA Offender. 'But For' this improperly (sic) mischaracterization by the government, this movant/defendant would have never went to trial on a simple gun possession § 922(g)(1)." Cook Aff. [Docket No. 123] ¶ 9. Cook continues, "[a]bsent the improper mischaracterization of being a ACCA Offender, the movant/defendant 'could have' considered the thought of a plea with the government and been

7

(sic) home by now." Id.  This claim fails for at least three reasons.

First, in order to prevail on such a claim, Cook must "present some credible, non-conclusory evidence that he would have pled guilty had he been properly advised." Sanders v. United States, 341 F.3d 720, 722 (8th Cir. 2003).  Cook does not present any evidence that he would have pled guilty had he been properly advised.  Rather, Cook complains that he was erroneously charged with being an Armed Career Criminal, and that he would have pled guilty but for this alleged mischaracterization.  Moreover, at the time Cook was charged, his prior predicate felonies still qualified for ACCA purposes.  It was not until Johnson was decided—issued after Cook was charged and found guilty but before he was sentenced—that his predicate felonies no longer qualified as violent felonies under the ACCA.

Additionally, "[a] defendant who maintains his innocence at all stages of his criminal prosecution and shows no indication that he would be willing to admit his guilt undermines his later § 2255 claim that he would have pleaded guilty if only he had received better advice from his lawyer." Sanders, 341 F.3d at 723.  Cook claims that he was "'NEVER' caught with a gun.  The government 'never' actually, physically, nor constructively CAUGHT me in or with the possession of a gun." Cook Aff. ¶ 4.  Cook's failure to acknowledge his guilt fatally undermines his claim.

Finally, Cook cannot display any prejudice from his decision to go to trial.  Cook's guideline range with credit for accepting responsibility would have been 295 to 265 months imprisonment.  Cook ultimately received 120 months, well below the guideline range Cook faced had he pled guilty.

**2. Alleged Failures Related to Calling or Questioning of Witnesses**

Cook argues that his counsel was ineffective for failing to call the first responding officer as a defense witness. This witness, Officer Kelly, testified for the Government and was cross-examined by Cook's counsel. There is no reason to believe he would have presented testimony favorable to the defense had he been called as a defense witness.

Next, Cook claims that his counsel was ineffective for failing to call any favorable witnesses. Cook does not identify any witnesses that he believes his counsel should have called. Without knowing what witnesses and testimony Cook argues should have been presented, it is impossible to know whether the calling of those witnesses would have produced a different result. Strickland, 464 U.S. at 694.

Cook also argues that his counsel was "ineffective by failing to impeach prosecution witness Officer [Name Unknown], who was not the 1st responding officer to the Terry Stop/Incident-to-arrest." Amended 2255 Motion at 5. This is an extension of Cook's earlier argument that the prosecution permitted false testimony to be introduced at trial.

Three officers testified at trial: Officer Kelly, Officer Kyle Joseph ("Officer Joseph") and Sergeant Ann Kjos ("Sergeant Kjos"). Since Officer Kelly testified that he was the first officer to make contact with Cook in the idling vehicle, he cannot be the witness Cook is referencing. Tr. at 162:2–8. Therefore, Cook must be taking issue with the cross-examinations of either Officer Joseph or Sergeant Kjos.

Officer Joseph testified that he responded to the initial scene as a back-up officer. Id. at 181:25–182:5. Officer Joseph also testified that he left the scene to pick up Cook, who had been apprehended by a different officer after he fled the scene. Id. at 182:10–183:1. Defense counsel

9

cross-examined Officer Joseph. Id. at 185:10–23. Sergeant Kjos testified that she was a homicide investigator investigating the death of Holt. Id. at 187:18–188:7. Cook's counsel also cross-examined Sergeant Kjos. Id. at 240:8–249:5; 249:21–250:13.

Cook does not identify what areas of Officer Joseph or Sergeant Kjos' direct examinations were not sufficiently probed and challenged on cross-examination. Moreover, Cook's bald suggestion that defense counsel failed to impeach prosecution witnesses is belied by the record. Both Officer Joseph and Sergeant Kjos's direct testimony was thoroughly tested on cross-examination.

### 3. ACCA Status

Cook next claims that his counsel ineffectively misadvised him regarding his ACCA offender status. Cook also generally alleges that his counsel "misinform[ed] him with other 'legal (sic) erroneous' information or communications." Amended 2255 Motion at 5. With respect to the ACCA designation, as discussed above, at the time Cook was charged his counsel correctly informed him that he was an Armed Career Criminal subject to the enhanced penalties of the ACCA. Thus, Cook's counsel provided accurate information. Cook's additional claim that his attorney communicated false information is fatally vague. Without some degree of specificity as to the alleged false information, it is impossible to tell whether or not Cook suffered any prejudice.

### 4. Evidence of Holt's Death

Cook argues that his "[c]ounsel falsely informed the defendant that in no way could the government present the 'false possibility' that he had anything to do with a Uncharged/Unindicted gang murder." Amended 2255 Motion at 5. Cook appears to be

10

challenging evidence related to the death of Holt.

This evidence was subject to a pretrial motion by Holt's attorney, which sought to prohibit introduction of evidence related to Cook's participation in Holt's murder. See Mot. Limine Prohibit 404(b) [Docket No. 55]. This Motion was denied, and the decision to admit this evidence was affirmed on appeal. See Tr. at 20:15–21:1; Cook, 842 F.3d at 601–02. There was nothing constitutionally deficient about Cook's counsel's performance with respect to evidence related to the death of Holt.

### 5. Motion for Mistrial and Motion for Acquittal

Cook argues that his counsel was ineffective for failing to file a motion for a mistrial or a motion for acquittal. Cook does not identify any factual basis to support filing a motion for a mistrial. Similarly, Cook does not identify a basis for a motion for acquittal. At trial, the Government presented compelling evidence showing that Cook possessed the firearm charged in the Indictment. In the face of such compelling evidence, faulting his attorney for not moving for a mistrial or for an acquittal does not establish a claim of ineffective assistance of counsel.

### 6. Failure to Subpoena Phone Records

Cook contends that his "[c]ounsel was ineffective for not supoening (sic) the cellphone records for the defendants (sic) defense." Amended 2255 Motion at 5. Again, Cook does not identify what phone records should have been subpoenaed or how the records would have assisted his defense. The phone records that were introduced at trial were presented by the Government. The phone records showed that Cook's phone contacted Holt's phone on the day Holt was killed. Tr. at 288:9–14. The Government also showed that Cook's phone traveled in close approximation, both geographically and temporally, to the scene of Holt's murder. Id. at

289:17–290:14.  Without identifying what additional phone records should have been pursued to rebut the phone records introduced by the Government, Cook's ineffective assistance of counsel argument fails.

### D. Newly Discovered Evidence

Cook argues that Black constitutes newly discovered evidence.  Accordingly to Cook, Black stands for the proposition that the government cannot prove possession through circumstantial evidence.  Cook's argument fails for multiple reasons.

First, newly discovered evidence for § 2255 purposes must meet five prerequisites:  "(1) the evidence must have been discovered after the trial; (2) the failure to discover the evidence must not be attributable to a lack of diligence on the part of the petitioner; (3) the evidence must not be merely cumulative or impeaching; (4) the evidence must be material; and, (5) the evidence must be likely to produce an acquittal if a new trial is granted."  English v. United States, 998 F.2d 609, 611 (8th Cir. 1993).  These prerequisites make clear that an appellate decision in an unrelated case is not newly discovered evidence.

Additionally, Black is distinguishable.  In that case, the defendant was a passenger in a vehicle fleeing the police.  Black, 871 F.3d at 602.  The fleeing vehicle was out of the officers' view for approximately three seconds.  Id.  After the chase ended, a firearm was found at the spot where the vehicle had momentarily been out of sight.  Id.  The Government contended that Black tossed the firearm out of the vehicle when it was obscured from the officers' view.  Id. at 602–04.  At trial, Black was convicted of possessing the firearm.  The Eighth Circuit reversed the conviction, concluding that the evidence of guilt was insufficient.  Id. at 604.  The Eighth Circuit noted that the firearm did not have any DNA or fingerprint evidence connecting it to

Black, and that no witness actually observed Black throw the firearm from the vehicle. Id. at 602. In contrast, the firearm Cook was charged with possessing was linked by substantial DNA evidence; 99.6% of the population other than Cook could be excluded as contributors of that DNA. Tr. at 328:15–19. The evidence of Cook's possession in this case is materially distinguishable from the evidence of possession in Black.

### E. Prosecutorial Misconduct

Cook faults the Government for introducing into evidence photographs of the Holt crime scene. Cook also argues that the Government brought in Holt's family members to observe the trial, and that they reacted in a manner that prejudiced Cook's right to a fair trial.

These are evidentiary issues that could have been raised on direct appeal. They were not. Therefore, they cannot be raised in a § 2255 petition. See Meeks v. United States, 742 F.3d 841, 844 (8th Cir. 2014) (procedural history omitted) ("A § 2255 petition is not a second direct appeal and issues raised for the first time in a § 2255 petition are procedurally defaulted."). Additionally, there is no prejudice because the evidence of guilt was overwhelming. There is simply no reason to believe that Cook's conviction was based upon the photographs of the Holt crime scene or upon reactions of individuals in the gallery.

### F. Higher Maximum Sentence

Cook argues that the "Court 'erred' when [it] calculated a higher penalty mandatory maximum sentence against him on the FALSE circumstantial assertion's (sic) that his mere [presence] near location to a murder incident of a victim that was known to him - warranted that he be pu[n]ished for the crime - even though he was not indicted nor charged with the crime." Amended 2255 Motion at 11.

This claim raises a sentencing error that could have been, but was not, raised on direct appeal. Accordingly, it cannot be raised in a § 2255 petition. Meeks, 742 F.3d at 844. Additionally, although Cook was deemed liable for the murder of Holt as a sentencing matter pursuant to U.S.S.G. § 2X1.1, it did not increase the maximum statutory penalty. See PSR ¶ 21. The statutory maximum penalty of 10 years remained even with the guideline enhancement. Id. ¶¶ 96–97. For these reasons, Cook's claim related to the sentencing enhancement fails.

**G. Arguments Raised in Cook's Reply**

On May 4, 2018, Cook filed a Reply in which he both further expanded upon previous arguments and raised new grounds for relief. Cook again reiterates his contention that Officer Kelley was not the initial officer to make contact with him in the idling vehicle. Cook then faults his attorney for not investigating "the fact that Officer Kell[e]y was not alone during the initial encounter." Reply at 1. Cook continues that an "unidentified female officer" may have provided testimony that contradicted that of Officer Kelley. Id. As noted above, the evidence at trial reflects that Officer Kelley was the first officer to make contact with Cook in the vehicle. Second, the alleged "unidentified female officer" was timely disclosed to the defense. Furthermore, the police reports reflect that Officer Landmesser—ostensibly the "unidentified female officer"—also noticed the aroma of marijuana originating from the vehicle. Second Supplemental Opposition Ex. 1. Accordingly, the police reports, which were also disclosed to the defense, defeat Cook's contention that his attorney was ineffective for failing to investigate whether Officer Kelley was alone during the initial encounter on November 25, 2013. Cook suffered no prejudice for any attorney conduct related to Officer Landmesser.

Cook next again challenges the display of photographs of the Holt crime scene as well as

14

the sentencing enhancement.  With respect to the photographs, this line of argument has been previously discussed.  Cook does not present any new facts or raise any new argument that warrants revisiting the Court's previous conclusion.  As to the sentencing enhancement, as discussed above, such an argument cannot be raised for the first time on collateral appeal.  In addition, the enhancement did not elevate the 120 month sentence Cook actually received.  Cook was subject to a 120 month statutory maximum, which is a significant departure from the 360 months to life guideline range calculated by his offense level.

Finally, Cook contends the Government's cell phone evidence was generated from "a cell number that was in no way, shape, or form connected to [Cook] nor proven to be."  Reply at 5. To the contrary, the cell phone discussed at trial was discovered in Cook's possession when he was arrested.  Tr. at 188:20–21.  Call records demonstrated that this phone made an outgoing call to Krystle White ("White"), who was later identified as Cook's girlfriend, shortly after Cook fled from the scene of the idling vehicle.  Id. at 190:23–191:1.  Cook was later arrested in the car White was driving.  Id. at 191:2–3.  Later, White provided law enforcement with the phone's password.  Id. 213:15–21.  Photographs and contact information stored in the phone connected it to Cook.  Id. at 214:11–18.  Last, the phone number in question was a number that Cook's probation officer used to communicate with Cook in the time leading up to his arrest.  Id. at 237:8–238:2.  Put simply, the evidence connecting the phone in question to Cook was substantial.[6]

---

[6] The White Affidavit [Docket No. 126-2] claiming that the only cell phone account Cook possesses in his name is a different number than the phone number discussed at trial does not aid Cook.  White's Affidavit does nothing to undermine the link between Cook and the cell phone discussed at trial.

### H. Evidentiary Hearing

Cook requests an evidentiary hearing. "An evidentiary hearing on a § 2255 petition may be denied if 'the motion and the files and the records of the case conclusively show that the prisoner is entitled to no relief.'" Noe v. United States, 601 F.3d 784, 792 (8th Cir. 2010) (quoting 28 U.S.C. § 255(b)). Because the Motion, files and record of this case conclusively show that Cook is not entitled to § 2255 relief, the request for an evidentiary hearing is denied.

### IV. CERTIFICATE OF APPEALABILITY

The Court may grant a certificate of appealability only where a defendant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Tiedeman v. Benson, 122 F.3d 518, 523 (8th Cir. 1997). To make such a showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). The Court finds it unlikely that another court would decide the issues raised in this 2255 Motion differently, or that any of the issues raised in Cook's Petition would be debatable among reasonable jurists. Thus, the Court declines to grant a certificate of appealability.

### V. CONCLUSION

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Cartez Lamar Cook's Motion to Vacate under 28 U.S.C. § 2255 [Criminal Docket No. 111], Cook's First Amended Motion to Vacate Under 28 U.S.C. § 2255 [Docket No. 114], and Cook's Motion for Leave to File an Amended Complaint [Docket No. 122] are **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:


　　　s/Ann D. Montgomery　　
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  June 29, 2018.